Samuel II. Hofstadteb, J.
Though negligence actions do not readily lend themselves to summary disposition, if ever such an action called for summary disposition, it is the case at bar. I have neither the right nor inclination to evade the issue, for the *163 basic facts are admitted. At the time of the accident, about 10:30 in the evening, defendant was traveling in a northerly direction in a southbound lane of the Taconic State Parkway. He concedes that he had been so traveling for about 5 miles at the rate of 30 miles an hour. In consequence of the accident, defendant was charged with reckless driving, pleaded guilty before a Justice of the Peace, and was fined.
It is suggested that the weather and the possibility of the plaintiff driver’s contributory negligence are issues of fact which should defeat summary judgment. These suggestions must be rejected as puerile.
So far as the weather is concerned, it is noteworthy that although defendant now claims that fog prevailed at the time of the accident, his motor vehicle accident report affirms that weather conditions were clear. But assuming his present version of the weather could be agitated on the trial, it must be concluded that his admitted rate of speed in a condition “ of greatly limited visibility ” amounted to such gross recklessness as to remove the weather as an issue in this case.
As for plaintiff’s alleged contributory negligence: Since a person is under no duty to look for motor vehicles traveling in the wrong direction on a one-way highway (see Vescio v. Silver-man, 20 Misc 2d 876; Marx v. United States, 132 F. Supp. 626), this issue cannot arise in this case.
Issue finding is the neutralizing agent for summary judgment applications — if genuine issues are found to exist, the case must take its usual course, but, where, as here, the issues are manifestly feigned, there is nothing to be tried and summary judgment should be awarded lest the dilatory tactics and delaying actions of defendants be rewarded.
Recurrent so-called ambulance-chasing investigations doubtless are necessary to preserve decorum in the profession. It is equally important, however, to discourage some recalcitrant insurance carriers from interposing illusory issues in the effort to obstruct plaintiffs’ just recoveries lest the processes of the administration of justice be subverted.
The twin evils of ambulance-chasing on the one hand, and obstructive tactics on the other are inevitable; they inhere in the present unrealistic system of dealing with automobile accident cases. These cases constitute the largest proportion of all litigation, with the resulting evils of delay and congestion in courts throughout the land.
Automobile accidents have kept pace with the steadily rising-highway use. In a real sense these are not caused by man but by the automobile itself. When the blow strikes the complainant *164 can obtain redress only by proving the operator careless. But if his own negligence contributed in any way he may not be recompensed, whatever the fault of the operator. These rules are so harsh that juries circumvent them, trial of these cases is largely a matter of chance, the courts are jammed, justice is delayed, and many accident victims are denied reimbursement. Alternative theories predicated on fault are more sound but miss the heart of the problem. The solution lies in granting compensation on a prearranged schedule regardless of fault — as in workmen’s compensation. If immediate adoption of such a plan is not possible, automobile cases should in the interim be assigned to special tribunals consisting of a Judge, a layman and a physician, with apportionment of damages substituted for the rule of contributory negligence. In the era of the automobile, no victim of its thrust should be required to carry the burden of his pain and suffering alone.
I am deeply sensible that a revision in the present system of dealing with automobile accident cases may cause — at least temporarily— some dislocation in the ranks of the legal profession, and perhaps even some hardship. But since I entertain no doubt that drastic reform is necessary, I have felt impelled to offer these views. In the words of the master himself:
Law is the business to which my life is devoted, and I should show less than devotion if I did not do what in me lies to improve it, and, when I perceive what seems to me the ideal of its future, if I hesitated to point it out and to press toward it with all my heart (Holmes, Collected Legal Papers).